UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOLDEN EAGLE INSURANCE CORPORATION and PEERLESS INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>DRAIN DOCTOR INC. and GHC OF SUNNYVALE, LLC, dba CEDAR CREST NURSING & REHAB CENTER<br><br>Defendants. | Case No.: 14-CV-03242-LHK<br><br>**ORDER GRANTING MOTION TO STAY PROCEEDINGS** |

Plaintiffs Golden Eagle Insurance Corporation ("Golden Eagle") and Peerless Insurance Company ("Peerless") (collectively, "Plaintiffs") have filed the instant lawsuit seeking declaratory relief that they owe neither a duty to defend nor a duty to indemnify Defendant Drain Doctor ("Drain Doctor") in an underlying state court lawsuit brought against Drain Doctor. Before the Court is Drain Doctor's Motion to Dismiss, or in the Alternative, to Stay Proceedings pending resolution of the underlying state court lawsuit. ECF No. 18 ("Mot."). Plaintiffs have opposed the motion, ECF No. 19 ("Opp."), and Drain Doctor has replied, ECF No. 21 ("Reply").

1

Case No.: 14-CV-03242-LHK
ORDER GRANTING MOTION TO STAY PROCEEDINGS

The Court finds this matter suitable for decision without oral argument under Civil Local Rule 7-1(b) and hereby VACATES the motion hearing set for March 19, 2015, at 1:30 p.m. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Drain Doctor's Motion to Stay Proceedings.

## I.   BACKGROUND

### A.   Insurance Policies

Plaintiffs have issued two separate insurance policies to Drain Doctor that provided liability coverage. ECF No. 1 ("Compl.") ¶ 9. First, Peerless issued to Drain Doctor a commercial general liability insurance policy, policy number CBP 8932754, effective December 15, 2012, to December 15, 2013 (the "Peerless Policy"). *Id.* ¶ 10. As relevant here, the Peerless Policy provides as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> \* \* \*
>
>   **b.** This insurance applies to "bodily injury" and "property damage" only if:
>     **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>     **(2)** The "bodily injury" or "property damage" occurs during the policy period;
>
> \* \* \*
>
> **SECTION V – DEFINITIONS**
>
> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2

Case No.: 14-CV-03242-LHK
ORDER GRANTING MOTION TO STAY PROCEEDINGS

Second, Golden Eagle issued to Drain Doctor a commercial excess liability policy, policy number CU 8815752, effective December 15, 2012, to December 15, 2013 (the "Golden Eagle Policy"). Compl. ¶ 13. As relevant here, the Golden Eagle Policy provides as follows:

**SECTION I – COVERAGES**

**Coverage A – Excess Liability**

We will pay on behalf of the "insured", damages in excess of the total amount payable under the terms of any "underlying insurance" stated in the Declarations. This coverage is subject to the same terms, conditions, agreements, exclusions and definitions as any "underlying insurance" stated in the Declarations except, when they are inconsistent with the provision of this coverage, in which case the provisions of this coverage will apply.

In addition, the Golden Eagle Policy contains the following endorsement and exclusion:

**EXCLUSION – PROFESSIONAL LIABILITY**

This endorsement modifies the insurance provided under the following:

**COMMERCIAL UMBRELLA/EXCESS LIABILITY POLICY**

The Additional Exclusion, L. Professional Services, applicable to Coverage B., is added to 1. Exclusions Applicable to Coverages A & B.

\* \* \*

**2. Additional Exclusions Applicable to Coverage B**

This insurance does not apply to:

\* \* \*

l. Professional Services
   "Bodily injury" or "property damage" due to or arising out of the rendering or failure to render any professional service. This includes but is not limited to:
   1) Legal, accounting, advertising or architectural services;
   2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
   3) Supervisory, inspection or engineering services;
   4) Medical, chiropractic, surgical, dental, x-ray or nursing services or treatment, advice or instruction;
   5) Any health service treatment, advice or instruction;
   6) Any service or treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;
   7) Optometry or optical or hearing aid services including, but not limited to,

3

the prescribing, preparation, fitting, demonstration or distribution of opthamalic lenses and similar products or hearing aid devices;
 8) Ear piercing, body piercing, body painting or tattooing services.

**B. Underlying Lawsuit**

On January 6, 2014, Drain Doctor was sued in Orange County Superior Court by GHC of Sunnyvale ("GHC") in an action entitled *GHC of Sunnyvale, LLC, dba Cedar Crest Nursing & Rehab Center v. Drain Doctor, Inc*. (the "Underlying Action"). ECF No. 20-1 ("State Compl.").[1] On April 18, 2014, the case was transferred to Santa Clara County Superior Court (No. 1-14-CV-264016). Pursuant to the insurance policies detailed above, Peerless is defending Drain Doctor in the Underlying Action under a reservation of rights.

In the Underlying Action, GHC alleges that in August 2013 Drain Doctor inspected the pipes at the Cedar Crest nursing facility operated by GHC and informed GHC that the main drain line was broken and needed replacement. State Compl. ¶¶ 4-5. GHC claims that, as a result of Drain Doctor's recommendation, GHC hired a contractor to replace the main drain line, closed the nursing facility, and displaced all of its patients, only to discover that the main drain line was not in fact broken. *Id.* ¶ 6. On this basis, GHC has sued Drain Doctor for breach of contract and negligence for failing to perform the inspections in a "professional manner" and erroneously reporting that the main drain line was broken and required replacement. *Id.* ¶¶ 7-14.

**C. Instant Lawsuit**

On July 17, 2014, Plaintiffs filed the instant lawsuit seeking a declaratory judgment that, as a matter of law, Plaintiffs owe no duty to defend or indemnify Drain Doctor in the Underlying Action. Compl. ¶¶ 21-30. In particular, Plaintiffs seek a determination from this Court as to whether the conduct of Drain Doctor as alleged in the underlying complaint—namely, Drain

---

[1] The Court GRANTS Plaintiffs' request for judicial notice of the state court complaint in the Underlying Action. ECF No. 20. The Court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, court documents already in the public record and documents filed in other courts are proper subjects of judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

4

Case No.: 14-CV-03242-LHK
ORDER GRANTING MOTION TO STAY PROCEEDINGS

Doctor's recommendation to replace the main drain line—constitutes an "occurrence" under the insurance policies, and whether that recommendation constitutes a "professional service" under the Golden Eagle Policy. *Id.* ¶¶ 23, 28.

On November 14, 2014, Drain Doctor filed the instant Motion to Dismiss, or in the Alternative, to Stay Proceedings pending resolution of the Underlying Action. Mot. at 1. Plaintiffs opposed the motion on November 26, 2014, Opp. at 1, and Drain Doctor replied on December 3, 2014, Reply at 1.

## II.   LEGAL STANDARD

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Based on the statute's "permissive language," district courts have broad "discretion to dismiss a federal declaratory judgment action when 'the questions in controversy . . . can better be settled in' a pending state court proceeding." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995) (holding that review of district court "decisions about the propriety of hearing declaratory judgment actions" is "for abuse of discretion"). "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc).

In deciding whether to stay or dismiss an action for declaratory relief, a district court should consider the three factors set forth in the Supreme Court's decision in *Brillhart*. *See R.R. St. & Co.*, 656 F.3d at 975. Specifically, a district court should (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Id.* (quoting *Dizol*, 133 F.3d at 1225). The three *Brillhart* factors are the "philosophic touchstone" of the *Wilton/Brillhart* analysis. *Id.* In addition,

the Ninth Circuit has suggested other considerations that may weigh in favor of a district court's decision to dismiss or stay an action for declaratory relief: whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; whether the use of a declaratory action will result in entanglement between the federal and state court systems; the convenience of the parties; and the availability of and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225 n.5 (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994) (Garth, J., concurring)). At bottom, "the district court must balance concerns of judicial administration, comity, and fairness to the litigants." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (internal quotation marks omitted).

### III.  DISCUSSION

The Court finds that application of the *Brillhart* factors, as well as the considerations set forth in *Kearns*, weighs in favor of staying the present action pending resolution of the Underlying Action. Although there is no indication that Plaintiffs are forum shopping, the Court finds it prudent to stay this action in order to avoid determining state law issues unnecessarily and to avoid duplicative litigation.

As to the first *Brillhart* factor, the Court notes that federal jurisdiction exists in this matter solely due to diversity of citizenship. Compl. ¶ 6. As such, the only issue to be addressed is whether Plaintiffs are entitled to declaratory relief with respect to insurance coverage, which is governed solely by state law. *See id.* ¶¶ 21-30; *see also Cont'l Ins. Co. v. Hexcel Corp.*, No. 12-CV-05352-YGR, 2013 WL 1501565, at *3 (N.D. Cal. Apr. 10, 2013) (explaining that plaintiffs' request for "a declaration regarding the scope of insurance coverage" was "governed solely by applicable state law"). Where, as here, the Court's ruling on Plaintiffs' declaratory relief claims will necessarily and exclusively involve application of California insurance law, and the only reason Plaintiffs are in federal court is because of diversity of citizenship, "the federal interest in

this matter is at its nadir." *Md. Cas. Co. v. Witherspoon*, 993 F. Supp. 2d 1178, 1183 (C.D. Cal. 2014); *see also Dizol*, 133 F.3d at 1232 (underscoring the importance of allowing states to protect "complex state administrative processes from undue federal interference," such as the "wholly state regulated insurance industry"). As a result, the Court concludes that the first *Brillhart* factor—avoiding the needless determination of state law—favors a stay here. *See Witherspoon*, 993 F. Supp. 2d at 1184 (finding "that the *Brillhart* policy of avoiding an unnecessary declaration of state law weighs against exercising discretionary jurisdiction").

As to the third *Brillhart* factor, the Court finds that whether declaratory relief is appropriate might well turn on issues related to the Underlying Action. For example, GHC brings a claim for negligence in the Underlying Action on grounds that Drain Doctor failed to conduct itself in a "professional manner." State Compl. ¶ 13. At the same time, however, Plaintiffs ask this Court to decide whether the "professional services" exclusion to the Golden Eagle Policy applies to Drain Doctor's conduct in the Underlying Action such that Golden Eagle is relieved of its duty to defend and indemnify Drain Doctor in that action. Compl. ¶¶ 23, 28. This Court's ruling on whether or not the professional services exclusion governs could very well impact the standard of care applicable to GHC's negligence claim in the Underlying Action and whether Drain Doctor's conduct fell below that standard. *See Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 997-98 (1994) (clarifying the distinction between "ordinary" and "professional" negligence). The Court, therefore, cannot conclude as a matter of law that its ruling on Plaintiffs' lawsuit for declaratory relief would not materially impact the Underlying Action. *See Witherspoon*, 993 F. Supp. 2d at 1185 (concluding that the court's ruling on whether an exception to the insurance policy's "Intellectual Property Exclusion" applied would effectively decide whether the defendant, who was the plaintiff in the underlying state court lawsuit, would "be able to prevail on her common law trade dress and slogan infringement claims"). Consequently, the Court finds that the third *Brillhart* factor—avoiding duplicative litigation—also favors a stay here. *See id.* (holding that the "overlap in issues weighs heavily against allowing Plaintiff's declaratory

7

Case No.: 14-CV-03242-LHK
ORDER GRANTING MOTION TO STAY PROCEEDINGS

judgment action to go forward, because it entangles the Court with the underlying state court action, as well as results in duplicative litigation").

Additional considerations favor a stay as well. For the reasons articulated above, the *Kearns* consideration regarding the entanglement between the federal and state court systems weighs strongly in favor of staying the instant action. *See Witherspoon*, 993 F. Supp. 2d at 1185 (expressing "great concern that exercising jurisdiction over this Action will result in entanglement between the federal and state court systems"). So too does the high risk of prejudice to Drain Doctor, which absent a stay would be required to defend itself concurrently in two related lawsuits. *See* ECF No. 22 at 4 (joint case management statement outlining the parties' "anticipated discovery" in this case); *see also Montrose Chem. Corp. v. Super. Ct.*, 25 Cal. App. 4th 902, 910 (1994) (describing the "prejudice" that "occurs when the insured is compelled to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers"). Where, as here, a "third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious." *Great Am. Ins. Co. v. Super. Ct.*, 178 Cal. App. 4th 221, 235 (2009) (internal quotation marks omitted). Finally, staying this action pending resolution of the Underlying Action may enhance the possibility of a global settlement. *See* ECF No. 26 at 1 (case management order requiring the parties to participate in global mediation). As a result, the Court finds that the interests of judicial economy, as well as concerns about comity and fairness to the parties, further weigh in favor of staying this action.

**IV.   CONCLUSION**

"[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."

1  *Wilton*, 515 U.S. at 288 n.2.  As a parallel state proceeding provides the strongest basis for the
2  Court's abstention, the instant action will not be dismissed but instead will be stayed pending
3  resolution of the Underlying Action.  Accordingly, the Court hereby GRANTS Drain Doctor's
4  Motion to Stay Proceedings.
5      The Clerk shall administratively close the case file.
6  **IT IS SO ORDERED.**

8  Dated: March 17, 2015

                                                       _____
                                                       LUCY H. KOH
                                                       United States District Judge